UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAUL VELASQUEZ, JR, CDCR# BE-1969<br><br>                                    Plaintiff,<br><br>v.<br><br>SEAMON, et al.,<br><br>                                    Defendants. | Case No.:  3:20-cv-1969-BAS-MDD<br><br>**ORDER:**<br><br>**1)  GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 3] AND**<br><br>**2)  DIRECTING U.S. MARSHAL TO EFFECT SERVICE OF COMPLAINT AND SUMMONS PURSUANT TO 28 U.S.C. § 1915(d) AND Fed. R. Civ. P. 4(c)(3)** |

On October 5, 2020, SAUL VELASQUEZ, JR ("Plaintiff"), currently incarcerated at California State Prison, Sacramento, and proceeding *pro se*, filed a civil rights action alleging that his Constitutional rights were violated when correctional officers failed to call for assistance after Plaintiff attempted suicide while he was incarcerated at R.J. Donovan Correctional Facility (RJD), located in San Diego, California. (ECF No. 1.)  On October 14, 2020, the Court dismissed Plaintiff's case because he failed to prepay the $400 civil filing fee required by 28 U.S.C. § 1914(a) and did not file a Motion to Proceed In Forma

Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a).  (ECF No. 2.)   The Court granted Plaintiff leave to pay the fee or file a moving to proceed IFP within 45 days.  *See* 28 U.S.C. § 1915(a)(2) and S.D. Cal. CivLR 3.2(b).  (*See* ECF No. 2 at 3–4.)  On November 6, 2020, Plaintiff filed a Motion to Proceed IFP. (ECF No. 3.)

## I.     Motion to Proceed IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States before December 1, 2020,[1] except an application for writ of habeas corpus, must pay a filing fee of $400.[2] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a).  *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). However, prisoners who are granted leave to proceed IFP remain obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 577 U.S. 82, 85 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether their action is ultimately dismissed.  *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) also requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C.

---

[1] On December 1, 2020, the filing fee associated with civil actions was raised to $402. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020)).

[2] In addition to the $350 statutory fee, civil litigants who filed a civil action before December 1, 2020, must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

§ 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

In support of his IFP Motion, Plaintiff has submitted a copy of his California Department of Corrections and Rehabilitation (CDCR) Inmate Statement Report as well as a Prison Certificate completed by a CDCR accounting officer. *See* ECF No. 3 at 4–5; 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. These statements show that Plaintiff has carried an average monthly balance of $1000.00, has had $200.00 in average monthly deposits to his account over the 6-month period immediately preceding the filing of his Complaint, and an $289.41 available balance of $289.41 on the books at the time of filing. (*See* ECF No. 3 at 4–5.) Based on this accounting, the Court **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 3) and assesses his initial partial filing fee to be $200.00 pursuant to 28 U.S.C. § 1915(b)(1).

The Court will direct the Secretary of the CDCR, or his designee, to collect the initial $200.00 fee assessed only if sufficient funds are available in Plaintiff's account at the time this Order is executed. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when

payment is ordered."). The remaining balance of the $350 total fee owed in this case must be collected by the agency having custody of the prisoner and forwarded to the Clerk of the Court pursuant to 28 U.S.C. § 1915(b)(2).

## II. Screening Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)

### A. Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint also requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief

[is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

### B. Plaintiff's Factual Allegations

In his Complaint, Plaintiff names six RJD correctional officers as defendants: Seamon, Galbrath, Nelson, Ayala, Soto and Sears. (Compl., ECF No. 1 at 2–3.) Plaintiff alleges that on September 16, 2019, while incarcerated at RJD in the Enhanced Outpatient (EOP) Unit for prisoners with mental health needs, he "suffered a mental breakdown which caused him to suffer from suicidal ideations resulting in a suicide attempt." (*Id.* at 8.)

At the time, Plaintiff was "being detained in a holding cage located in the B-6 rotunda approximately 5 to 6 feet from the [correctional] officers' office." (*Id.* at 4.) While in the holding cell, Plaintiff told the six defendant correctional officers, who were all purportedly present and within earshot, that he was "experiencing severe suicidal ideations." (*Id.*) Plaintiff states that he complained loudly and repeatedly to the correctional officers, particularly Seamon, that he was having thoughts of harming himself. (*Id.* at 4, 6–7.) He contends the defendants ignored and dismissed his complaints. In one instance, Plaintiff complained directly to Seamon, who walked away after stating: "[D]on't feel like doing no paperwork today. Don't care." (*Id.* at 4.) Plaintiff states that the other five defendant correctional officers expressed similar sentiments. When Plaintiff continued to complain, the defendants "proceeded to close the office door" and again told Plaintiff they "were not going to call anyone" because it would create paperwork. (*Id.* at 6.)

At some point, Plaintiff began to "slice his arm" with a razor in "9 different places, which caused profuse bleeding." (*Id.* at 4, 7.) Defendants "observed Plaintiff making the cuts" (*id.* at 6) and saw the large amount of blood coming from Plaintiff's arm but did not

offer immediate assistance. (*Id.* at 6–7.) Instead, Plaintiff contends, "all the defendants left Plaintiff in a locked holding cell for approximately 25 minutes" without medical attention, while Plaintiff "stood bleeding." (*Id.* at 5, 6.) Defendants "were aware of the severity of [Plaintiff's] injury but fail[ed] to activate their emergency alarms or call medical personnel to render assistance." (*Id.* at 8.) Plaintiff alleges that being left to bleed in the holding cell for 25 minutes caused his physical injuries to be worse and resulted in further damage to his already fragile mental state. (*Id.* at 8.)

Based on these facts, Plaintiff alleges Defendants Seamon, Galbrath, Nelson, Ayala, Soto and Sears violated his Eighth and Fourteenth Amendment rights. Plaintiff seeks $60,000 in compensatory damages, $300,000 in punitive damages and "any other damages the Court deems appropriate." (*Id.* at 10.)

As currently pleaded, the Court finds that Plaintiff's Complaint contains "sufficient factual matter, accepted as true," to state Eighth Amendment claims for relief that are "plausible on [their] face," *Iqbal*, 556 U.S. at 678, and, therefore, sufficient to survive the "low threshold" set for sua sponte screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm*, 680 F.3d at 1123; *see also Iqbal*, 556 U.S. at 678; *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) ("To prove a violation of the Eighth Amendment a plaintiff must 'objectively show that he was deprived of something "sufficiently serious," and make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety.'") (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *United States v. Williams*, 842 F.3d 1143, 1153 (9th Cir. 2016) (stating the Eighth Amendment "requires that prison officials 'must take reasonable measures to guarantee the safety of the inmates.'"); *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) ("[A] prison official can violate a prisoner's Eighth Amendment rights by failing to intervene."); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (stating that "delay of, or interference with, medical treatment can also amount to deliberate indifference").

Therefore, the Court will direct the U.S. Marshal to effect service of summons and Plaintiff's Complaint on his behalf.[3] *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) ("[T]he court may order that service be made by a United States marshal or deputy marshal . . . if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915.").

### III.  Conclusion and Order

For the reasons explained, the Court:

1.  **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 3).

2.  **ORDERS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's prison trust account the $350 filing fee owed in this case by collecting monthly payments from the account in an amount equal to twenty percent (20%) of the preceding month's income and forward payments to the Clerk of the Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). ALL PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3.  **DIRECTS** the Clerk of the Court to serve a copy of this Order on Kathleen Allison, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

4.  **DIRECTS** the Clerk to issue a summons as to Plaintiff's Complaint (ECF No. 1) and to forward it to Plaintiff along with a blank U.S. Marshal Form 285 for each named Defendant. In addition, the Clerk will provide Plaintiff with certified copies of this Order,

---

[3] Plaintiff is cautioned that "the sua sponte screening and dismissal procedure is cumulative of, and not a substitute for, any subsequent Rule 12(b)(6) motion that [a defendant] may choose to bring." *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007).

his Complaint, and the summons so that he may serve these Defendants. Upon receipt of this "IFP Package," Plaintiff must complete the USM Form 285s as completely and accurately as possible, *include an address where each named Defendant may be found and/or subject to service* pursuant to S.D. Cal. CivLR 4.1c., and return them to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package.

5. **ORDERS** the U.S. Marshal to serve a copy of the Complaint and summons upon the Defendants as directed by Plaintiff on the USM Form 285s provided to him. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

6. **ORDERS** Defendants, once they have been served, to reply to Plaintiff's Complaint within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a). *See* 42 U.S.C. § 1997e(g)(2) (while a defendant may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility  under section 1983," once the Court has conducted its sua sponte screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and thus, has made a preliminary determination based on the face on the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," defendant is required to respond).

7. **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon Defendants, or if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Plaintiff must include with every original document he seeks to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document has been was served on Defendants or their counsel, and the date of that service. *See* S.D. Cal. CivLR 5.2. Any document received by the Court which has not been properly filed with the Clerk or which

fails to include a Certificate of Service upon the Defendants, or their counsel, may be disregarded.

**IT IS SO ORDERED.**

Dated: January 25, 2021

Cynthia Bashant
United States District Judge